**UNITED STATES**

v.

**First Lieutenant Livingston T. TIMSUREN, United States Air Force**

**ACM 38146**

U.S. Air Force Court of Criminal Appeals

Sentence adjudged 23 April 2012 by GCM convened at Eielson Air Force Base, Alaska.

02 October 2013

Military Judge: Martin T. Mitchell (sitting alone).

Appellate Counsel for the Appellant: Captain Nicholas D. Carter.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Brian C. Mason; Gerald R. Bruce, Esquire.

Before HELGET, WEBER, and PELOQUIN Appellate Military Judges

## OPINION OF THE COURT

WEBER, Judge:

A general court-martial composed of a military judge sitting alone convicted the appellant, pursuant to his pleas, of dereliction of duty, conduct unbecoming an officer and a gentleman, and three specifications for obstructing justice and fraternization, in violation of Articles 92, 133, and 134, UCMJ, 10 U.S.C. §§ 892, 933, and 934. The adjudged and approved sentence was a dismissal and confinement for 7 days.[1] The appellant now challenges the providence of his guilty plea to conduct unbecoming an officer and a gentleman and to the two fraternization specifications. Finding no error materially prejudicial to the substantial rights of the appellant, we affirm.

### Background

The appellant was a junior officer assigned to the communications squadron at Eielson Air Force Base (AFB). In December 2010, he engaged in sexual intercourse with a senior airman, and in June 2011, he had sexual intercourse with a different enlisted member. Also in June 2011, he hosted a promotion party at his off-base residence at which he served copious amounts of alcohol. He invited two Air Force Academy cadets who were at Eielson AFB for an Air Force orientation

---

1. A pretrial agreement that limited confinement to no more than 12 months if no dismissal was adjudged, or no more than 6 months if a dismissal was adjudged, had no effect on the sentence.

program. The appellant was one of two officers assigned to oversee the cadets during their orientation. During the party, the appellant served alcohol to an underage female cadet and engaged in flirtatious behavior with her. He then persuaded her to kiss him for a brief period, and ultimately, she decided to sleep in the appellant's bed, although no sexual activity occurred.

That same month, the appellant attended a party hosted by a master sergeant. Numerous enlisted personnel and civilians also attended. During the party, the appellant encountered LT, the wife of a major who had until shortly before the party been assigned to Eielson AFB. LT was in the kitchen by herself with just a few other people nearby. The appellant approached her, promptly kissed her, and bit her lip. While the two were engaged in this activity, some enlisted personnel observed them, including one who remarked that they should "get a room." After a few minutes, LT and the appellant moved to the bathroom where the appellant engaged in further sexual behavior with LT behind a closed door. After this incident, LT reported that the appellant's actions occurred without her consent and despite her efforts to stop him.

After the appellant learned of an investigation resulting from LT's sexual assault allegation, he discussed the matter with the master sergeant who had hosted the party. The appellant asked the master sergeant whether he observed any of the activity between LT and the appellant, and the master sergeant replied that he had not. The appellant then asked the master sergeant to falsely tell investigators that he had observed LT consensually enter the bathroom with the appellant. The master sergeant declined to do so, and the appellant promptly withdrew his request and apologized.

The Government charged the appellant with dereliction of duty (for providing alcohol to the female cadet and failing to maintain a professional relationship with her), abusive sexual contact and conduct unbecoming an officer and a gentleman (for engaging in sexual behavior in the bathroom with LT, the wife of an Air Force officer, while at a party attended by enlisted Airmen and hosted by an enlisted Airman), obstructing justice, and two specifications of fraternization (for engaging in sexual intercourse with the two enlisted members). Pursuant to a pretrial agreement, the appellant pled guilty to all charges and specifications except abusive sexual contact, which the Government agreed to withdraw and dismiss with prejudice.[2]

### *Providence of Pleas—Inquiry into Protected vs. Prohibited Conduct*

The appellant first alleges that his pleas of guilty for conduct unbecoming and fraternization were improvident under *United States v. Hartman*, 69 M.J. 467 (C.A.A.F.2011). He alleges that the military judge improperly failed to explain to him the difference between private, consensual sexual activity that is constitutionally protected and that which is criminally proscribed.

■ We review a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Nance*, 67 M.J. 362, 365 (C.A.A.F.2009). In *Hartman*, our superior court held that a military judge erred during a consensual sodomy guilty plea inquiry by failing to adequately discuss the distinction between protected and non-protected behavior, since the charge potentially implicated both criminal and constitutionally protected conduct. *Hartman*, 69 M.J. at 468. The Court observed that under *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), and *United States v. Marcum*, 60 M.J. 198 (C.A.A.F.2004), a charge of consensual sodomy may implicate both criminal and constitutionally protected conduct. *Hartman*, 69 M.J. at 468. In this situation, "the distinction between what is permitted and what is prohibited constitutes a matter of 'critical significance.'" *Id.* (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F.2003)). The Court noted that the military judge did ask questions about the circumstances surrounding the consensual sodomy, but the judge's only discussion about *Lawrence* and *Marcum* occurred with

---

2.  The pretrial agreement allowed the appellant to plead guilty to the remaining charges and specifi-

cations with certain exceptions and substitutions, which he did.

trial counsel, not the appellant. This fell short of the requirement for "a dialogue in which the military judge poses questions about the nature of the offense and the accused provides answers that describe his personal understanding of the criminality of his or her conduct." *Id.* at 469.

In *United States v. Medina,* 72 M.J. 148 (C.A.A.F.2013), our superior court applied *Hartman* to find a guilty plea to consensual sodomy improvident. The Court noted that the providence inquiry in *Medina* was more satisfactory than the inquiry in *Hartman,* because the military judge actually elicited facts in an attempt to demonstrate that the accused's sexual activity was subject to criminal sanction. *Id.* at 150. However, the Court nonetheless found the inquiry deficient because the military judge failed to elicit the accused's "personal understanding that the additional facts elicited are necessary for his conduct, which might otherwise fall within the liberty interest defined in *Lawrence,* to be subject to criminal sanction." *Id.* at 150 n. 2.

In the instant case, the military judge engaged in an extended colloquy with the appellant as to why his actions with LT constituted conduct unbecoming an officer and a gentleman.[3] The military judge also conducted a thorough inquiry into the fraternization specifications, resulting in the appellant's admissions that his actions in having sexual intercourse with the two enlisted members violated the custom of the Air Force that officers shall not fraternize with enlisted members on terms of military equality, that his conduct prejudiced good order and discipline (in part because he supervised enlisted members), and that his conduct was service discrediting.

The military judge did not elicit the accused's personal understanding that these facts were necessary for his conduct, which might otherwise be protected, to be subject to criminal sanction. However, we do not find error because we hold that the military judge was not required to conduct a *Hartman* inquiry for either the conduct unbecoming an officer and a gentleman or the fraternization specifications.

Neither *Hartman* nor *Medina* defines precisely what types of charged activity require this inquiry from the military judge.[4] However, both *Lawrence* and *Marcum* indicate that a constitutional liberty interest may be implicated when a person engages in private, consensual sexual activity. *See Lawrence,* 539 U.S. at 567, 123 S.Ct. 2472 (striking down state law criminalizing private, consensual same-sex sodomy and noting that such laws "touch[ ] upon the most private human conduct, sexual behavior, and in the most private of places, the home"); *Marcum,* 60 M.J. at 207 (noting that conduct may be of a nature to bring it within the *Lawrence* liberty interest when it involves "private, consensual sexual activity between adults"). In addition, this Court has held that the *Marcum* analysis is applicable to any private, consensual sexual conduct regardless of which UCMJ article the Government chooses to employ in

---

3. The military judge elicited the following details from the appellant: (1) Enlisted members, civilians, and dependents attended the party, and an enlisted member hosted the party; (2) LT was the wife of an active duty officer who was assigned to Eielson Air Force Base (AFB) until shortly before the party; (3) The appellant knew LT was married to an active duty officer; (4) LT and the appellant engaged in increasingly flirtatious behavior throughout the night, culminating in the events in the kitchen and bathroom; (5) The enlisted members at the party knew the appellant was an Air Force officer; (6) LT was employed at Eielson AFB as a civilian employee; (7) After the sexual behavior ceased, the appellant remarked to LT that this could "ruin his career"; and (8) Several enlisted Airmen noticed LT and the appellant kissing in the kitchen, and one of the Airmen even remarked that they should "get a room." The appellant also agreed that his behavior was "morally unfitting and unworthy," and that his actions were open and notorious, rather than private and discrete. The appellant admitted that his behavior was clearly detrimental to his authority and stature as an Air Force officer. In his own words, the appellant admitted that "my actions detracted from my officership. I was publicly making out with [LT] in front of the enlisted members. Your Honor, that reflects poorly upon myself as an officer in the Air Force."

4. In another decision not directly relevant here, our superior court has declined to extend *Hartman* to a guilty plea to nonconsensual sodomy, since nonconsensual sodomy "does not implicate constitutional protections or even arguably constitute permissible behavior." *United States v. Whitaker,* 72 M.J. 292, 293 (C.A.A.F.2013).

charging the conduct. *United States v. Harvey*, 67 M.J. 758 (A.F.Ct.Crim.App.2009), *rev. denied*, 68 M.J. 489 (C.A.A.F.2010).

### 1. Conduct unbecoming an officer and gentleman

■ In the instant case, the appellant's own admissions demonstrate that his conduct in the bathroom with LT was not private and consensual; therefore, we hold that the military judge was not required to conduct the *Hartman* inquiry concerning the plea to conduct unbecoming an officer and a gentleman. At trial, the appellant admitted his behavior in kissing LT in the kitchen was open and notorious, not private and discreet, since multiple Airmen saw the appellant kissing LT. While the charged conduct with LT only encompassed the activity in the bathroom, there was no meaningful break between the appellant's activity with LT in the kitchen and his activity with her in the bathroom. In addition, the Stipulation of Fact the appellant signed noted that other Airmen at the party observed the appellant and LT entering the bathroom together after just having kissed out in the open. It is a fair inference that the Airmen who saw the appellant and LT kissing in the kitchen, and then saw them enter the bathroom together and close the door, suspected that the appellant was engaging in inappropriate behavior with a married woman.[5]

The appellant's conduct with LT may have been consensual, but it was not private, and therefore no constitutional liberty interest was implicated. *Cf. United States v. Goings*, 72 M.J. 202, 206 (C.A.A.F.2013) (holding that indecent act conviction for sexual intercourse in presence of third party who videorecorded activity fell outside *Lawrence* liberty interest because it did not take place in a "wholly private setting"). The military judge was therefore not required to elicit the appellant's understanding about the difference between permitted and prohibited conduct.

### 2. Fraternization

■ Concerning the two fraternization specifications, both acts of sexual intercourse with enlisted members took place in private, with their consent. Nonetheless, we find that the military judge was not required to conduct a *Hartman* inquiry with the appellant.

We recognize that *Lawrence* and *Marcum* broadly indicate that a protected liberty interest may be implicated for any private, consensual sexual activity. However, both cases did so in the context of consensual sodomy, not fraternization with an enlisted member. We also recognize that this Court has held that the *Marcum* analysis is applicable to any private, consensual sexual conduct regardless of which UCMJ article the Government employs to charge the conduct. *Harvey*, 67 M.J. at 761. However, *Harvey* involved an act of consensual sodomy that the Government happened to charge under Article 133, UCMJ, instead of the sodomy article, and it involved a litigated specification in which the accused's liberty interest was very much implicated. In fact, this Court held that the conduct was permissible and survived scrutiny under *Marcum*, although we then held, in a case of first impression, that his conduct could nonetheless be proscribed as conduct unbecoming an officer and a gentleman. *Id.* at 762. The instant case is significantly different in that it involves a guilty plea to fraternization, a long-recognized prohibition in the armed forces that has not faced the constitutional challenges that consensual sodomy has.

We find that under *Lawrence, Marcum*, and *Harvey*, the appellant's fraternization implicated no constitutional liberty interest that required the military judge to conduct a *Hartman* inquiry. The appellant's charged misconduct involved private, consensual sexual activity, but the gravamen of the offense was the overly familiar relationship he allowed himself with these enlisted members. Sexual intercourse was merely the means by which this inappropriate relationship completed. *Cf. Goings*, 72 M.J. at 206 (observing that the "focal point of *Lawrence*" was "sexual conduct between two individuals in a wholly private setting that was criminal for no other reason than the act of the sexual

---

**5.** The Stipulation of Fact noted that at least one enlisted person present at the party knew LT was married.

828

conduct itself"). The fraternization and inappropriate relationship could just as easily have been consummated through gambling, borrowing and loaning money, or sharing living accommodations. *See* Air Force Instruction 36–2909, *Professional and Unprofessional Relationships,* ¶ 5.1 (1 May 1999).

The appellant's fraternization with two enlisted members is therefore very different from the situations in *Hartman* and *Medina,* where constitutional liberty interests were implicated by private, consensual sodomy. Under *Lawrence* and *Marcum,* certain consensual sexual activity may meet the elements of the applicable UCMJ article yet not be punishable because of the accused's constitutional liberty interest. Some acts may be proscribed while some may be permitted, depending on the facts of the particular situation. Conversely, fraternization requires proof that the member's conduct violated the custom of the service that officers shall not fraternize with enlisted members on terms of military equality, and that the conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. Fraternizing through sexual conduct does not qualify for constitutional protection in the military context. *See United States v. Stirewalt,* 60 M.J. 297, 304 (C.A.A.F.2004) (holding that supervisor-subordinate consensual sodomy prohibited by Coast Guard unacceptable relationships regulation "fell outside any protected liberty interest recognized in *Lawrence* and was appropriately regulated as a matter of military discipline"). As the appellant's misconduct fell outside any protected liberty interest, the military judge was not required to engage in a *Hartman* inquiry.

### Factual Providence of Pleas

Finally, the appellant alleges that his guilty plea to conduct unbecoming an officer and a gentleman was factually improvident. Specifically, he alleges that the military judge's inquiry as to whether the actions rose to the level of conduct unbecoming an officer and a gentleman improperly centered on the appellant's actions in the kitchen with LT, rather than the charged actions that occurred in the bathroom behind a closed door.

■■■ "In reviewing the providence of [the a]ppellant's guilty pleas, we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Carr,* 65 M.J. 39, 41 (C.A.A.F.2007) (citing *United States v. Hardeman,* 59 M.J. 389, 391 (C.A.A.F.2004)). This is an area in which the military judge is entitled to "significant deference." *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F.2008) (citing *United States v. Jordan,* 57 M.J. 236, 238 (C.A.A.F.2002)). A military judge abuses his discretion when accepting a plea if he does not ensure the accused provides an adequate factual basis to support the plea during the providence inquiry. *See United States v. Care,* 40 C.M.R. 247 (C.M.A.1969).

■■■ Our reviewing standard for determining if a guilty plea is provident is whether the record presents a substantial basis in law or fact for questioning it. *Id.; United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). At trial, the military judge must ensure the accused understands the facts (what he did) that support his guilty plea, and the judge must be satisfied that the accused understands the law applicable to his acts (why he is guilty) and that he is actually guilty. *See United States v. Medina,* 66 M.J. 21, 26 (C.A.A.F.2008) (citing *Care,* 40 C.M.R. at 250–51); *Jordan,* 57 M.J. at 238.

■■■ The military judge's inquiry established a sufficient factual basis to support the appellant's guilty plea to conduct unbecoming an officer and a gentleman. The appellant correctly notes that the military judge's questions as to why the appellant's acts rose to the level of unbecoming conduct largely centered on the events in the kitchen rather than the charged events in the bathroom. However, the events in the kitchen directly related to the charged events in the bathroom. The charged events in the bathroom immediately followed the kissing that took place in the kitchen, in plain view of others.[6]

6. The Government introduced photographs of the residence that showed the kitchen was open to other parts of the house and was easily viewable from other rooms. The photographs also demonstrate the kitchen was a very short distance from the bathroom.

The appellant's actions in the kitchen—plus his admission in the Stipulation of Fact that other Airmen saw him and LT enter the bathroom together—demonstrate that his actions in the bathroom tended to negatively affect his standing as an officer, even if the enlisted members present had to use their imagination as to what specifically was transpiring. In addition, the appellant admitted that after he ceased the sexual behavior, he told LT that this could ruin his career, evincing his understanding at that time that his actions could negatively reflect upon him. These facts, along with the appellant's admissions that he knew LT was married to another Air Force officer and his conclusion that his entire course of conduct was unbecoming of an officer and a gentleman, supplied an adequate basis for the military judge to accept the appellant's guilty plea. We find no substantial basis in law or fact for questioning the providence of the plea.

### Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a); 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and the sentence are

AFFIRMED.